IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| IAN ANTHONY MASSEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO. 2:12-CV-530-WC |
| ) | [WO] |
| ) | |
| QUALITY CORRECTIONAL ) | |
| HEALTHCARE, INC., *et al.*, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

**I. INTRODUCTION**

In this 42 U.S.C. § 1983 action, Ian Anthony Massey ["Massey"], a former county inmate, challenges the medical treatment provided to him during his prior incarceration in the Montgomery County Detention Facility. *Complaint - Doc. No. 1* at 2-3. Specifically, Massey alleges that the jail's medical personnel acted with deliberate indifference to his medical needs associated with a left knee injury suffered prior to his incarceration. *Id.* In an amendment to the complaint, Massey challenges the fees assessed to inmates for medical treatment. *Amendment to the Complaint - Doc. No. 14* at 2. Massey names Quality Correctional Healthcare, Inc. ["QCHC"], Dr. Jerry Gurley and Nurse Tameika Copelin as defendants in this cause of action. Massey seeks declaratory relief and monetary damages for the alleged violations of his constitutional rights.

The defendants filed an answer, special reports, a supplement to the reports and

supporting evidentiary materials addressing Massey's allegations. In these documents, the defendants adamantly deny they acted with deliberate indifference to Massey's medical needs and further argue that they are not responsible for the assessment/collection of payments from inmates for medical treatment as these actions are undertaken by Montgomery County. Upon receipt of all requisite documents from the defendants, the court informed Massey that the defendants' special reports may, at a future time, be treated as a motion for summary judgment and explained to Massey the proper manner in which to respond to a motion for summary judgment. *September 7, 2012 Order - Doc. No. 33*. Massey filed his response to the defendants' report on June 5, 2013. *Doc. No. 43*.

Pursuant to the aforementioned order, the court deems it appropriate to treat the defendants' reports as a motion for summary judgment. Thus, this case is now pending on the defendants' motion for summary judgment. Upon consideration of this motion, the evidentiary materials filed in support thereof and the plaintiff's response, the court concludes that the defendants' motion for summary judgment is due to be granted.

### III.  STANDARD OF REVIEW

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (citation to former rule omitted); Fed. R. Civ. P. 56(a)

("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").[1] The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue [- now dispute -] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-24.

The defendants have met their evidentiary burden and demonstrated the absence of any genuine dispute of material fact. Thus, the burden shifts to the plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed. R. Civ. P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact by [citing to materials in the record including affidavits, relevant documents or other materials] the court may . . . grant

---

[1] Effective December 1, 2010, Rule 56 was "revised to improve the procedures for presenting and deciding summary-judgment motions." Fed. R. Civ. P. 56 Advisory Committee Notes. Under this revision, "[s]ubdivision (a) carries forward the summary-judgment standard expressed in former subdivision (c), changing only one word -- genuine 'issue' becomes genuine 'dispute.' 'Dispute' better reflects the focus of a summary-judgment determination." *Id.* "'Shall' is also restored to express the direction to grant summary judgment." *Id.* Thus, although Rule 56 underwent stylistic changes, its substance remains the same and, therefore, all cases citing prior versions of the rule remain equally applicable to the current rule.

summary judgment if the motion and supporting materials -- including the facts considered undisputed -- show that the movant is entitled to it."). A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263.

> In civil actions filed by inmates, federal courts must distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of [medical personnel]. Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 548 U.S. 521, 530 (2006) (internal citation omitted). Consequently, to survive the defendants' properly supported motion for summary judgment, Massey is required to produce "sufficient [favorable] evidence" which would be admissible at trial supporting his claims of constitutional violations. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); Fed. R. Civ. P. 56(e). "If the evidence [on which the nonmoving party relies] is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Id*. at 249-50. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S. Ct. 2505, 2512, 91 L. Ed. 2d 202 (1986)." *Walker v. Darby*, 911 F.2d 1573, 1576-77 (11th Cir. 1990). Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine issue of material fact and, therefore, do not suffice to oppose a motion for

summary judgment. *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (A plaintiff's "conclusory assertions . . . , in the absence of [admissible] supporting evidence, are insufficient to withstand summary judgment."); *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (grant of summary judgment appropriate where inmate produces nothing beyond "his own conclusory allegations" challenging actions of the defendants); *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("Mere verification of party's own conclusory allegations is not sufficient to oppose summary judgment . . . ."); *Evers v. General Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("[C]onclusory allegations without specific supporting facts have no probative value."). Hence, when a plaintiff fails to set forth specific facts supported by requisite evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Sw. Forest Indus., Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (If on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate.).

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Prop. Located at 5800 SW 74th Ave., Miami, Fla.*, 363 F.3d 1099, 1101 (11th Cir. 2004). What is material is determined by the substantive law

applicable to the case. *Anderson*, 477 U.S. at 248; *Lofton v. Sec'y of the Dep't of Children and Family Servs.*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment."). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted). To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates there is no genuine dispute of material fact and the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex*, 477 U.S. at 323-24 (summary judgment appropriate where pleadings, evidentiary materials and affidavits before the court show no genuine dispute as to a requisite material fact); *Waddell v. Valley Forge Dental Assocs., Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001) (To establish a genuine dispute of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor.).

Although factual inferences must be viewed in a light most favorable to the

nonmoving party and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact. *Beard*, 548 U.S. at 525; *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Thus, the plaintiff's *pro se* status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case. In this case, Massey fails to demonstrate a requisite genuine dispute of material fact in order to preclude summary judgment in favor of the defendants.

### III. DISCUSSION[2]

#### A. Deliberate Indifference

Massey contends that the defendants acted with deliberate indifference to his medical needs. To prevail on a claim concerning an alleged denial of adequate medical treatment, an inmate must, at a minimum, show that the defendants acted with deliberate indifference to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97 (1976); *Taylor v. Adams*, 221 F.3d 1254 (11th Cir. 2000); *McElligott v. Foley*, 182 F.3d 1248 (11th Cir. 1999); *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989); *Rogers v. Evans*, 792 F.2d

---

[2]The record indicates that Massey was a pre-trial detainee during the period of time that the alleged constitutional violations occurred. Regardless of Massey's status in the jail, either as a pre-trial detainee or convicted inmate, the applicable standard of review remains the same. *Bell v. Wolfish*, 441 U.S. 520 (1979); *Lancaster v. Monroe Cnty., Ala.*, 116 F.3d 1419, 1425 n.6 (11th Cir. 1997); *Cottrell v. Caldwell*, 85 F.3d 1480, 1490 (11th Cir. 1996) (citations omitted) ("Claims involving the mistreatment of arrestees or pretrial detainees in custody are governed by the Fourteenth Amendment's Due Process Clause instead of the Eighth Amendment's Cruel and Unusual Punishment Clause, which applies to such claims by convicted prisoners. . . . However, the applicable standard is the same, so decisional law involving prison inmates applies equally to cases involving arrestees or pretrial detainees."); *Hamm v. DeKalb Cnty.*, 774 F.2d 1567, 1574 (11th Cir. 1985), *cert. denied*, 475 U.S. 1096 (1986) (For analytical purposes, there is no meaningful difference between the analysis required by the Fourteenth Amendment and that required by the Eighth Amendment.); *Tittle v. Jefferson Cnty. Comm'n*, 10 F.3d 1535, 1539 (11th Cir. 1994) (observing that "[w]hether the alleged violation is reviewed under the Eighth or Fourteenth Amendment is immaterial.").

1052, 1058 (11th Cir.1986).  Specifically, medical personnel may not subject an inmate to "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle*, 429 U.S. at 106; *Adams v. Poag*, 61 F.3d 1537, 1546 (11th Cir. 1995) (citation and internal quotations omitted) (As directed by *Estelle*, a plaintiff must establish "not merely the knowledge of a condition, but the knowledge of necessary treatment coupled with a refusal to treat or a delay in [the acknowledged necessary] treatment."

> That medical malpractice-negligence by a physician-is insufficient to form the basis of a claim for deliberate indifference is well settled.  *See Estelle v. Gamble*, 429 U.S. 97, 105-07, 97 S. Ct. 285, 292, 50 L. Ed. 2d 251 (1976); *Adams v. Poag*, 61 F.3d 1537, 1543 (11th Cir. 1995).  Instead, something more must be shown.  Evidence must support a conclusion that . . . harmful acts [of jail officials or medical personnel] were intentional or reckless.  *See Farmer v. Brennan*, 511 U.S. 825, 833-38, 114 S. Ct. 1970, 1977-79, 128 L. Ed. 2d 811 (1994); *Cottrell v. Caldwell*, 85 F.3d 1480, 1491 (11th Cir. 1996) (stating that deliberate indifference is equivalent of recklessly disregarding substantial risk of serious harm to inmate); *Adams*, 61 F.3d at 1543 (stating that plaintiff must show more than mere negligence to assert an Eighth Amendment violation); *Hill v. Dekalb Regional Youth Detention Ctr.*, 40 F.3d 1176, 1191 n.28 (11th Cir. 1994) (recognizing that Supreme Court has defined "deliberate indifference" as requiring more than mere negligence and has adopted a "subjective recklessness" standard from criminal law); *Qian v. Kautz*, 168 F.3d 949, 955 (7th Cir.1999) (stating "deliberate indifference" is synonym for intentional or reckless conduct, and that "reckless" conduct describes conduct so dangerous that deliberate nature can be inferred).

*Hinson v. Edmond*, 192 F.3d 1342, 1345 (11th Cir. 1999).

In order to properly establish "deliberate indifference to [a] serious medical need . . . , Plaintiff[] must show: (1) a serious medical need; (2) the defendants' deliberate

indifference to that need; and (3) causation between that indifference and the plaintiff's injury." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306-07 (11th Cir. 2009). When seeking relief based on deliberate indifference, an inmate is required to establish "an objectively serious need, an objectively insufficient response to that need, subjective awareness of facts signaling the need and an actual inference of required action from those facts." *Taylor*, 221 F.3d at 1258; *McElligott*, 182 F.3d at 1255 (for liability to attach, the official must know of and then disregard an excessive risk to the prisoner). Thus, deliberate indifference occurs only when a defendant "knows of and disregards an excessive risk to inmate health or safety; the [defendants] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer*, 511 U.S. at 837; *Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998) (defendant must have actual knowledge of a serious condition, not just knowledge of symptoms, and ignore known risk to serious condition to warrant finding of deliberate indifference). Furthermore, "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 838.

> In articulating the scope of inmates' right to be free from deliberate indifference, . . . the Supreme Court has . . . emphasized that not 'every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment.' *Estelle*, 429 U.S. at 105, 97 S. Ct. at 291; *Mandel*, 888 F.2d at 787. Medical treatment violates the eighth amendment only when it is 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'

> *Rogers*, 792 F.2d at 1058 (citation omitted).  Mere incidents of negligence or malpractice do not rise to the level of constitutional violations.  *See Estelle*, 429 U.S. at 106, 97 S. Ct. at 292 ('Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.'); *Mandel*, 888 F.2d at 787-88 (mere negligence or medical malpractice 'not sufficient' to constitute deliberate indifference); *Waldrop*, 871 F.2d at 1033 (mere medical malpractice does not constitute deliberate indifference).  Nor does a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment support a claim of cruel and unusual punishment.  *See Waldrop*, 871 F.2d at 1033 (citing *Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir. 1977)).

*Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991); *Taylor*, 221 F.3d at 1258 (citation and internal quotations omitted) (To show deliberate indifference to a serious medical need, a plaintiff must demonstrate that [the] defendants' response to the need was more than "merely accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable under state law.").  Moreover, "as *Estelle* teaches, whether government actors should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding liability under the Eighth Amendment."  *Adams*, 61 F.3d at 1545; *Garvin v. Armstrong*, 236 F.3d 896, 898 (7th Cir. 2001) ("A difference of opinion as to how a condition should be treated does not give rise to a constitutional violation."); *Hamm v. DeKalb Cnty.*, 774 F.2d 1567, 1575 (11th Cir. 1985) (mere fact inmate desires a different mode of medical treatment does not amount to deliberate indifference violative of the Constitution); *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981) (prison medical personnel do not violate the Eighth Amendment simply because their opinions

10

concerning medical treatment conflict with that of the inmate-patient). Self-serving statements by a plaintiff do not create a question of fact in the face of contradictory, contemporaneously created medical records. *See Bennett v. Parker*, 898 F.2d 1530 (11th Cir. 1990).

In addition to the above described requisite elements, when an inmate's deliberate indifference claim alleges a delay in treatment, this court must also consider "(1) the seriousness of the medical need; (2) whether the delay worsened the medical condition; and (3) the reason for the delay." *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1327 (11th Cir. 2007). In a case alleging that delay in medical treatment shows deliberate indifference, the plaintiff "must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment [on his medical condition] to succeed." *Hill v. DeKalb Reg'l Youth Det. Cent.*, 40 F.3d 1176, 1187-88 (11th Cir. 1994), *overruled in part on other grounds*, *Hope v. Pelzer*, 536 U.S. 730, 739 n.9 (2002); *Mann*, 588 F.3d at 1307.

Massey asserts that the jail's medical personnel acted with deliberate indifference to his knee condition because they failed to issue him a bottom bunk/bottom tier profile on February 13, 2012 when he initially referenced his problems with using the stairs and accessing a top bunk, denied him appropriate medication for his knee/back pain and failed to provide appropriate treatment for his post-surgical knee. The defendants adamantly deny they acted with deliberate indifference to Massey's medical needs.

The evidentiary materials filed by the defendants address the allegations made by

Massey. A thorough review of these documents demonstrates that the affidavits submitted by the medical defendants describing the treatment provided to Massey are corroborated by the objective medical records contemporaneously compiled with such treatment. The medical records and an affidavit from Dr. Gurley addresses the treatment provided to Massey relevant to the claims presented in the complaint as follows:

> The first contact QCHC and its employees had with the Plaintiff was when an intake history and physical was conducted on February 9, 2012. [During intake, Massey advised the screening nurse that he previously underwent surgery on his left knee and further informed her that he was on no medications at that time. *Defendants' Exhibit 2 to the Special Report - Doc. No. 12-2* at 1-2. Upon receiving authorization from Massey, *Defendants' Exhibit 3 to the Special Report - Doc. No. 12-3* at 13, QCHC requested relevant medical records from the UAB health system and received these records via fax on February 15, 2012. The medical records obtained from UAB demonstrated that Massey] had knee surgery on July 13, 2011 at UAB. The surgery consisted of a left knee arthroscopy, ACL reconstruction with patellar tendon autograph, medial meniscal repair and lateral meniscectomy. He was discharged from UAB on July 14, 2011 with a hinged knee brace.
> On February 13, 2012, the Plaintiff placed a sick call [request] which was received [by medical personnel] on February 15, 2012. He was seen by a nurse [on the aforementioned date]. He complained of screws, anchors and staples and said it was hard to get up and down from his top bunk. [Massey, however, did not mention an alleged fall from the bunk on February 12, 2012 or any injuries allegedly suffered in such fall. *Defendants' Exhibit 2 to the Special Report - Doc. No. 12-2* at 15. The nurse obtained Massey's signature on an authorization form for release of his medical records and instructed Massey to return to sick call if he had any further problems. *Id*. The nurse also advised Massey that the physician would have to review his medical records to determine whether to issue a bottom bunk profile. *Id*.] His medical records were ordered to be reviewed by the doctor and, [on November 21, 2012], Dr. Bates entered an order that [Massey] be placed in a lower bunk/lower tier. [Massey also filed another sick call request on February 20, 2012 seeking a bottom bunk profile. *Id*. at 14.] Dr. Bates'

order [for a bottom bunk profile/bottom tier housing] was reviewed and signed by me on February 27, 2012.

The Plaintiff . . . placed a sick call request on February 24, 2012 and it was received [by medical personnel] on February 25, 2012. He stated that he fell in his cell getting down from the top bunk on February 12, 2012. There was no previous sick call [request mentioning the fall or any attendant injuries to Massey's knee] or knowledge [by medical personnel] of the fall. [A nurse examined Massey on February 25, 2012 regarding his complaints related to the alleged fall from his bunk. *Defendants' Exhibit 2 to the Special Report - Doc. No. 12-2* at 13. After her examination, the nurse referred Massey to the doctor for further assessment of his condition. *Id*.] He refused medication and made insulting remarks about the doctors.

I saw the Plaintiff on February 27, 2012 regarding left knee pain and right wrist pain. He stated that he had fallen from the top bunk [on February 12th]. His knee had minimal swelling, and he had full range of motion of the knee. He walked with no difficulty and the knee was non-tender. His right wrist had full range of motion and good function. I felt at that time that he was malingering and was definitely . . . displaying manipulative and threatening behavior. I ordered x-rays of the left knee and right wrist [and prescribed Motrin 400 mg twice a day for four days and a warm compress for his knee for four days. *Defendants' Exhibit 3 to the Special Report - Doc. No. 12-3* at 18]. The left knee x-ray showed no fracture or dislocation. There was evidence of previous ACL repair.

The Plaintiff placed a sick call request on March 29, 2012, complaining of knee pain. However, he refused to be seen [by medical personnel regarding this complaint]. He stated that he would buy Motrin or deal with the pain on his own and that he would take care of it on the outside.

The Plaintiff subsequently placed a sick call request on June 13, 2012, which was received [by medical personnel] on June 15, 2012. He complained that his knee was worse. He was now [also] complaining of lower back pain and he thought he had nerve damage. He was evaluated by a nurse and the doctor was called. He was placed on increased fluids and orders were given for his knee to be elevated at bedtime.

The Plaintiff was seen June 18, 2012 complaining of knee pain and swelling, and with muscle problems and back pain. He was noted to be able to walk without difficulty. His left knee was swollen, but non-tender. His motor and sensitivity function was within normal limits. He again appeared to be exhibiting malingering and manipulative behavior. [An order to obtain an appointment with an orthopedic specialist regarding evaluation of

> Massey's left knee was entered and a 5-day prescription for Motrin was issued for the inmate during this evaluation.]
>
> An orthopedic follow up appointment [was scheduled with Dr. Charles Hartzog of Alabama Orthopedic Specialists on July 31, 2012. *Defendants' Exhibit 3 to the Special Report - Doc. No. 12-3 at 18.*].

*Defendants' Exhibit 1 to the Special Report (Aff. of Dr. Jerry N. Gurley) - Doc. No. 12-1* at 1-3.

Under the circumstances of this case, the court concludes that the course of treatment undertaken by the defendants in addressing Massey's complaints regarding his knee and subsequent pain issues did not violate his constitutional rights. The care Massey received was certainly not "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to the fundamental fairness." *Harris*, 941 F.2d at 1505. The allegations presented by Massey simply fail to establish deliberate indifference by the medical defendants. *Garvin*, 236 F.3d at 898 (difference of opinion regarding manner in which condition should be treated fails to demonstrate a constitutional violation); *Adams*, 61 F.3d at 1545-46 (Whether medical personnel "should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis" on which to ground constitutional liability. Moreover, any allegation that health care personnel did not diligently pursue alternative means of treating a condition "did not 'rise beyond negligence'. . . to the level of deliberate indifference."); *Hamm*, 774 F.2d at 1505 (inmate's desire for some other form of medical or dental treatment does not constitute deliberate indifference violative of the

14

Constitution); *Franklin*, 662 F.2d at 1344 (simple divergence of opinions between medical personnel and inmate-patient do not violate the Eighth Amendment). Finally, to the extent Massey bases his claims on purported malpractice by the defendants, *Plaintiff's Response - Doc. No. 43* at 2, the law is well settled that medical malpractice does not establish deliberate indifference. *Estelle*, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."); *Taylor*, 221 F.3d at 1258 (deliberate indifference requires more than a showing of medical malpractice); *Mandel*, 888 F.2d at 787-88 (mere negligence or medical malpractice is "not sufficient" to constitute deliberate indifference); *Waldrop*, 871 F.2d at 1033 (medical malpractice does not constitute deliberate indifference).

It is undisputed that Massey received treatment for his left knee and other alleged associated pain while incarcerated in the Montgomery County Detention Facility. Specifically, medical personnel evaluated each of his sick all requests, conducted physical examinations when warranted, issued him a bottom bunk/bottom tier profile upon his requests for these actions, prescribed him medication, provided warm compress therapy and referred him to a free-world orthopedic specialist for additional evaluation.[3] All of the treatment rendered by the defendants occurred pursuant to their professional judgment after their evaluation of Massey's physical condition. In addition, Massey has failed to present

---

[3] Massey composed the first request for a bottom bunk profile on February 13, 2012, a day after his alleged fall, and medical personnel received this request on February 15, 2012. He did not mention his fall in this request. *Defendants' Exhibit 2 to the Special Report - Doc. No. 12-2* at 15. A lower bunk/bottom tier profile was issued to Massey on February 21, 2012. *Defendants' Exhibit 3 to the Special Report - Doc. No. 12-3* at 19.

any evidence which indicates that the medical defendants knew that the manner in which they provided treatment created a substantial risk to his health and that with this knowledge consciously disregarded such risk. The record is therefore devoid of evidence, significantly probative or otherwise, showing that the defendants acted with deliberate indifference to Massey's medical needs. Consequently, summary judgment is due to be granted in favor of the defendants on the deliberate indifference claim. *Carter*, 352 F.3d at 1350.

### B. Medical Fees

Massey complains that his constitutional rights were violated by the deduction of fees from his inmate account for partial payment of costs attendant to his receipt of medical treatment. The defendants assert that neither QCHC nor any of its employees are responsible for the assessment or collection of fees associated with medical treatment provided to inmates. *Defendants' Exhibit 1 to the September 7, 2012 Supplemental Special Report (Affidavit of Dr. Johnny E. Bates) - Doc. No. 32-1* at 1 (QCHC and its employees "are compensated for our services solely pursuant to provisions of [a contract with Montgomery County]. QCHC does not make any direct monetary charges to inmates. To the extent that the charges are made to inmates for medical services, such charges are made by Montgomery County."). Massey presents no evidence to dispute the manner in which charges are made and collected. Moreover, even if the defendants were responsible for assessment and collection of medical fees, these actions, standing alone, do not violate the Constitution. The mere fact that the plaintiff is charged a nominal fee or co-payment for

medical treatment does not in any way deprive the plaintiff of a protected right, privilege or immunity. *Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 408 (9th Cir. 1985) (imposition of fee for medical treatment provided to an inmate does not amount to a constitutional violation); *Bester v. Dr. Wilson*, 2000 WL 1367984 at *8 (S.D. Ala. August 18, 2000) ("[T]he charging of a fee to prisoners for medical treatment from their funds has been held to be constitutional when challenged on several due process and Eighth Amendment grounds."). Massey does not allege that he was denied medical treatment because he was unable to pay the fee; instead, the undisputed evidentiary materials before the court indicate that Massey received medical treatment despite a negative balance in his inmate account. *See Plaintiff's Application for Leave to Proceed In Forma Pauperis (Resident Transaction Details) - Doc. No. 2-1* at 1-3. Since Massey has failed to allege a violation of his constitutional rights with respect to the assessment/collection of fees associated with medical treatment, the defendants are entitled to summary judgment on this claim.

## IV. CONCLUSION

For the foregoing reasons, it is

ORDERED and ADJUDGED that:

1. The defendants' motion for summary judgment is GRANTED.

2. Judgment is GRANTED in favor of the defendants.

3. This case is DISMISSED with prejudice.

17

4. No costs are taxed herein.

A separate Final Judgement will accompany this Memorandum Opinion.

Done this 23rd day of May, 2014.

>/s/ Wallace Capel, Jr.
>WALLACE CAPEL, JR.
>UNITED STATES MAGISTRATE JUDGE